KUMIN SOMMERS LLP
Matthew Kumin, SBN 177561
870 Market Street, Ste. 428
San Francisco, CA 94102
(415) 434-4500 (Tel.)
(415) 434-8453 (Fax)
info@kuminsommers.com

Attorneys for Defendant
Paul Hubert

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIGSLIST, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TODD THOMPSON, PAUL HUBERT, JOHN DOE d/b/a CRAYGO.COM, and Does 2 through 25, inclusive,<br><br>Defendants. | **CASE NO.: CV-08-5067-JW**<br><br>**DEFENDANT PAUL HUBERT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT (FRCP 60(b)(4))**<br><br>Hearing Date: October 31, 2011<br>Time: 9:00 a.m. |

### STATEMENT OF FACTS

On or about September 23, 2009, Plaintiff craigslist, Inc, ("Plaintiff") filed its Second Amended Complaint, therein for the first time naming Paul Hubert ("Hubert" or "Defendant") as a Defendant in this action.  Electronic Case Filing Docket Entry ("DE") 37.  On September 28, 2009, Plaintiff sent a process server to 25 W. Malloryville Rd., Freeville, NY 13068, in an apparent attempt to serve Hubert with some documents.  Affidavit of Chad Conley ("Conley Aff.") ¶¶ 3-10.  The process server, whose name was later learned to be John Madan ("Madan"),

Kumin Sommers LLP

- 1 -

Kumin Sommers LLP

1   approached Chad Conley ("Conley"), a resident of the aforementioned address, and suggested

2   that Conley was posing as someone named Chad, but in reality was Paul Hubert, the Defendant

3   in this matter.  Conley Aff. ¶¶ 3-4.  After a few contentious words were exchanged between

4   Conley and Madan, Conley brusquely instructed Madan to leave his property.  Conley Aff. ¶¶ 4-

5   6.  Madan started to walk towards his car, then doubled back, threw the papers on Conley's

6   porch and said something to the effect of "those [papers] are for Paul."  Conley Aff. ¶ 6,8.  After

7   Madan threw the papers on the porch, a woman sitting in the passenger seat (presumably

8   Madan's wife who also notarized Madan's proof of service) shouted to Madan that he "can't do

9   that" at which point Madan returned to the porch, picked up the papers, and left the premises.

10   Conley Aff. ¶ 9,10.  It appears that Madan and his wife have some sort of husband and wife legal

11   process service company.

12          On or about September 28, 2009, Hubert was not a resident of 25 W. Malloryville Rd.,

13   Freeville, NY.  Affidavit of Paul Hubert ("Hubert Aff.") ¶ 4, 6-7; Conley Aff. ¶ 22.  Hubert was

14   in fact living with his sister at 3 Church St., Oswego, NY at the time.  Hubert Aff. ¶ 4; Affidavit

15   of Penny Utter ("Utter Aff.") ¶ 6.  Hubert spoke with Conley sometime after Madan had come to

16   Conley's house, and Conley told Hubert about the events of September 28.  Hubert Aff. ¶ 5.

17   Hubert was not aware of the contents of the papers Madan was attempting to serve.  Hubert Aff.

18   ¶ 11.

19          On two different occasions, Plaintiff's attorney has sworn, under penalty of perjury, that

20   Hubert was "served" or "personally served" with the summons and Plaintiff's Second Amended

21   Complaint.  Declaration of Brian Hennesey in Support of craigslist, Inc.'s Request for Entry of

22   Default ("Hennesey Decl. I") ¶ 7; Declaration of Brian Hennesey in Support of Plaintiff

23   craigslist, Inc.'s Motion for Default Judgment against Defendant Paul Hubert ("Hennesey Decl.

24   II")¶ 12.  Furthermore, Plaintiff filed a Certificate of Service with this Court, signed and

25   notarized by Carol Madan, stating that Plaintiff served documents on "Chad."  DE 42.

26          Hubert was not presented with any court documents in this case whatsoever, whether by

27   alleged personal or alleged substituted service.  Hubert Aff. ¶ 17.  Plaintiff craigslist, Inc., was

28

*craigslist, Inc. v Thompson et al.,* CAND Case No.:  CV-09-5067-JW
PLAINTIFF PAUL HUBERT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO VACATE DEFAULT JUDGMENT (F.R.C.P. 60(b)(4))

granted Default Judgment against Defendant Paul Hubert on April 15, 2010.  DE 63. Hubert did

not even become aware of this lawsuit until late June, 2011. Hubert Aff. ¶ 14-16.

## ARGUMENT

I.    The Default Judgment In This Action Is Void Because Defendant Paul Hubert Was Never Served With Summons In This Case And Has Made No Appearance On It.

"[T]he court may relieve a party…from a final judgment, order, or proceeding for the

following reasons…(4) the judgment is void." F.R.C.P. Rule 60(b)(4).  "Relief from void

judgments is not discretionary."  Chambers v. Armontrout, 16 F.3d 257, 260 (8th Cir. 1994).

"Once a district court decides that the underlying judgment is void, the trial judge…*must* grant

the appropriate 60(b) relief."  Blaney v. West, 209 F.3d 1027 (7th Cir. 2000) (emphasis added).

Where a plaintiff fails to properly serve the defendant, and subsequently obtains a default

judgment against that defendant, that default judgment is void.  Mason v. Gensico Technology

Corp., 960 F.2d 849 (9th Cir. 1991) ("Mason").  "A default judgment entered when there has

been no proper service of the complaint is, a fortiori, void, and should be set aside." Gold Kist,

Inc. v. Laurinburg Oil Co., 756 F.2d 14, 19 (3rd Cir. 1985).  It follows, then, that when a default

judgment is taken against a defendant who was not properly served, and the defendant brings a

motion under F.R.C.P. 60(b)(4) to vacate that default judgment, the court must grant that motion.

Here, we have just such a case.

F.R.C.P. Rule 4(e)(2) allows for proper service of process on an individual in one of three

ways: (A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of

suitable age and discretion who resides there; or (C) delivering a copy of each to an agent

authorized by appointment or by law to receive service of process.  Section (1) of F.R.C.P. rule 4

also allows for service to be effectuated "following state law for serving a summons in an action

*craigslist, Inc. v Thompson et al.*, CAND Case No.: CV-09-5067-JW
PLAINTIFF PAUL HUBERT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO VACATE DEFAULT JUDGMENT (F.R.C.P. 60(b)(4))

Kumin Sommers LLP

1  brought in courts of general jurisdiction in the state where the district court is located or where

2  service is made."[1]  The process server did none of those acts.

3          The affidavits submitted by Defendant herewith sharply contradict the assertions of the

4  process server and Plaintiff's counsel, in that it is Defendant's contention that Plaintiff never

5  served Defendant with anything whatsoever. No summons, no complaint, no motions for default

6  – nothing.  Nonetheless, Plaintiff represented to this Court on no less than three occasions that it

7  had in fact served Defendant with a summons and complaint.  See: Declaration of Nicholas

8  Manheim Accompanying craigslist Inc.'s Case Management Conference Statement ¶ 14;

9  Hennesey Decl. II ¶ 12; Hennesey Decl. I ¶ 7.  Plaintiff's attorney even went so far as to swear

10  that Defendant was "personally served" with the summons and complaint when the Certificate of

11  Service specifically says that someone other than Defendant was served.  see: Hennesey Decl I ¶

12  7; Certificate of Service - Docket Entry ("DE") 42.[2]

13  _____

14  [1] This latter provision allows, then, for process to be effective in this case if it were served in

15  conformity with either Federal rules, those of California (where the action is pending) or those of
   New York, where Defendant Paul Hubert ("Defendant") was purportedly served.  The pertinent

16  portions of the New York Civil Practice and Law Rules (N.Y. C.P.L.R. § 308) mirror F.R.C.P.
   rule 4(e). see: Howard Johnson Int'l. v. Wang, 7 F. Supp 2d. 336, 339 (S.D.N.Y. 1998).

17  California Code of Civil Procedure § 415.10 states that "[a] summons may be served by personal
   delivery of a copy of the summons and of the complaint to the person to be served," while §

18  415.20 also allows that  "a summons may be served by leaving a copy of the summons and
   complaint at the person's dwelling house, usual place of abode... in the presence of a competent

19  member of the household or a person apparently in charge of his or her office, place of business,

20  or usual mailing address other than a United States Postal Service post office box, at least 18
   years of age, who shall be informed of the contents thereof." The California rules also allow for

21  substituted service at the person's "usual mailing address," but only after attempting to first
   personally serve the party and by "thereafter mailing a copy of the summons and complaint by

22  first-class mail, postage prepaid to the person to be served at the place where a copy of the
   summons and complaint were left." Cal. Code Civ. Proc § 415.20(b).  The New York rules also

23  require "mailing the summons to the person to be served at his or her last known residence or by
   mailing the summons by first class mail to the person to be served at his or her actual place of

24  business..." when service is made by substituted service. At the heart of all three rules is the fact

25  that process *must actually be served*.  It does not matter which rules Plaintiff wishes to employ;
   none will avail it, as Plaintiff craigslist, Inc. ("Plaintiff") never actually served Defendant, by any

26  method, with any documents in this case.  Hubert Aff. ¶ 17; see also Conley Aff. ¶ 10.

27  [2] The Certificate of Service states that an "attached list of documents" was served on Paul Hubert

28  by delivery to "Chad 'Doc' (refused last name)."  There is no attached list of documents in the

- 4 -

Kumin Sommers LLP

1  Defendant does not dispute that Plaintiff's process server went to Conley's house in an

2  apparent attempt to serve Defendant.  What Defendant *does* take issue with is the fact that no

3  documents of any kind were left behind by the process server on that day, or any other day, for

4  Defendant.  There quite simply was no service of process.  While Plaintiff's process server

5  initially threw whatever documents he may have been carrying onto Conley's porch, he then

6  quickly retrieved them and left the premises. Conley Aff. ¶ 10.  He never returned to that

7  address, nor did he go to Defendant's actual address, to serve proper process and notify

8  Defendant that an action was pending against him.  Moreover, he did not mail any documents to

9  that address.

10  Plaintiff did not comply with F.R.C.P. Rule 4, substantially or otherwise.  Plaintiff did

11  not serve Defendant, or anyone else, with the summons or the Second Amended Complaint

12  (which was the first court document to name Paul Hubert as a Defendant in this action).  "A

13  person is not bound by a judgment in a litigation to which he or she has not been made a party by

14  service of process." Mason, 960 F.2d at 851.  Because Defendant was never made a party to this

15  case by service of process, he cannot be bound by the judgment.  The judgment is void and must

16  be vacated.

17

18  II.  Even If Plaintiff's Process Server Had Left The Summons And Complaint at 25 W.
       Malloryville, Freeville, NY on September 28, 2009, The Judgment Is Still Void Because

19     The Service of Process Was Improper As That Address Was Not Defendant's Dwelling
       House Or Usual Place Of Abode.

20

21  Just as the fact that Plaintiff never served Defendant with a complaint or summons

22  renders the default judgment void, so too does the fact that Plaintiff's purported service was not

23  accomplished at Defendant's "usual dwelling house or place of abode."   The plain language of

24  _____

25  case file.  The careless manner in which the process server filled out the certificate of service
    leaves us all in the dark as to exactly what documents he claims he served.  Given that the

26  Certificate of Service contains a check-off box for "summons and complaint" (the only
    documents Plaintiff has ever claimed it served on Defendant), the lack of an attached list casts

27  further doubt on whether any documents were served at all.

28

Kumin Sommers LLP

- 5 -

1   Federal Rules of Civil Procedure and the states of California and New York require that for

2   substituted service to be effective, process must be served on the individual's usual dwelling

3   house or place of abode. F.R.C.P. Rule 4(e); Cal. Code Civ. Proc. § 415.20; N.Y. C.P.L.R. §

4   308. The California rules also allow for substituted service at the person's "usual mailing

5   address," but only after exercising reasonable diligence in an attempt to first personally serve the

6   party and by "thereafter mailing a copy of the summons and complaint by first-class mail,

7   postage prepaid to the person to be served at the place where a copy of the summons and

8   complaint were left." Cal. Code Civ. Proc § 415.20(b). The New York rules also require

9   "mailing the summons to the person to be served at his or her last known residence or by mailing

10  the summons by first class mail to the person to be served at his or her actual place of

11  business…" when service is made by substituted service. Again, "[a] default judgment entered

12  when there has been no proper service of the complaint is, a fortiori void, and should be set

13  aside." <u>Gold Kist, Inc. v. Laurinburg Oil Co.</u>, 756 F.2d 14, 19 (3rd Cir. 1985).

14      Plaintiff has not filed a single affidavit, declaration or certificate of service stating that it

15  mailed copies of the summons and complaint to Defendant after the alleged substituted service

16  on Chad Conley. As such, Plaintiff's only hope is to prove that it effected substituted service in

17  conformity with F.R.C.P. Rule 4(e) by "leaving a copy of [the summons and complaint] at the

18  individual's dwelling or usual place of abode with someone of suitable age and discretion who

19  resides there." Plaintiff will fail in any such argument. 25 W. Malloryville Rd., Freeville, NY

20  was not Defendant's usual dwelling house or place of abode on or about September 28, 2009, nor

21  during any of the preceding months when Plaintiff claims to have first learned of his identity.

22  Utter Aff. ¶ 6; Conley Aff. ¶ 22; Hubert Aff. ¶ 4.

23      The concept of "usual dwelling house or place of abode" has not been precisely defined

24  under the law. <u>National Dev. Co. v. Triad Holding Corp.</u>, 930 F.2d 253, 256 (2nd Cir. 1991).

25  One of the primary questions is whether there are "sufficient indicia of permanence" associated

26  with the address in question. <u>Id</u>. at 257. "When a defendant does not have a permanent place of

27  residence, a court will consider whether he intended to return to the place of service in order to

28

- 6 -

Kumin Sommers LLP

1   determine whether it can be characterized as his usual place of abode." <u>Blue Cross and Blue</u>

2   <u>Shield of Michigan v. Chang</u>, 109 F.R.D. 669 (E.D. Mich. 1986).

3         At the time Plaintiff purportedly sub-served Defendant via Chad Conley, Defendant was

4   living with his sister, Penny Hubert, at 3 Church St., Oswego, NY.  Utter Aff. ¶ 6; Hubert Aff. ¶

5   4. While it is true that Defendant had previously lived at the W. Malloryville Rd. house,

6   Defendant moved out of that house at the end of April 2009.  Hubert Aff. ¶ 3; Conley Aff. ¶ 23.

7         There is no "evidence that [Defendant] lived at the residence where service was

8   effected," and therefore service was improper under F.R.C.P. Rule 4(e)(2*)*.  <u>Stars' Desert Inn</u>

9   <u>Hotel & Country Club v. Hwang</u>, 105 F.3d 521, 524 (9th Cir.1997).  If Defendant had any

10  physical address that could be termed his "dwelling house or usual place of abode" at all in

11  September 2009, it was at his sister's house.

12        It was apparent from Paul Madan's behavior on September 28, 2009 that he believed

13  Chad Conley to be Paul Hubert, though Conley disabused Madan of this notion by showing

14  Madan his driver's license. Conley Aff. ¶ 4-7.  Subsequently, Plaintiff made no further attempts

15  to personally serve Defendant with anything, at any time, according to the documents on file in

16  this case.  Plaintiff instead chose to rely on its erroneous belief that Chad Conley's address was

17  also that of Paul Hubert when it allegedly served Defendant with the summons and complaint.

18  Notwithstanding the fact that no summons or complaint was ever served by Plaintiff to anyone at

19  25 W. Malloryville Rd., Freeville, NY, even if service had been made at that address, it would

20  nonetheless remain improper because that was not Defendant's usual dwelling house or place of

21  abode.  While Defendant may have previously lived at that address, at the time of the alleged

22  service there was no indicia of Defendant's permanence at that residence.  Because service was

23  never properly made, the judgment is void and must be vacated.

24      //

25      //

26      //

27      //

28      //

- 7 -

Kumin Sommers LLP

1

## CONCLUSION

2      Defendant Paul Hubert was never personally served with a summons, a complaint, or any

3 other documents in this case nor was he served by substituted service.  He has not been properly

4 made a party through service of process and therefore the default judgment against him is void

5 ab initio and must be vacated.  Furthermore, even if Plaintiff could demonstrate that a summons

6 and complaint was served at 25. W. Malloryville Rd., Freeville, NY on September 28, 2009,

7 such service was improper, as that address was not Defendant's usual dwelling house or place of

8 abode.  Wherefore, Defendant requests this Court to declare the Default Judgment entered

9 against Defendant Paul Hubert void and vacate that judgment accordingly.

10

11

12 Dated: September 12, 2011                          KUMIN SOMMERS LLP

13

14                                           Matthew Kumin

15                                           Attorneys for Defendant
                                          Paul Hubert

16

17

18

19

20

21

22

23

24

25

26

27

28

*craigslist, Inc. v Thompson et al.,* CAND Case No.:  CV-09-5067-JW
PLAINTIFF PAUL HUBERT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO VACATE DEFAULT JUDGMENT (F.R.C.P. 60(b)(4))

Kumin Sommers LLP