Brian Hennessy (SBN 226721)
E-mail: BHennessy@perkinscoie.com
**Perkins Coie LLP**
101 Jefferson Drive
Menlo Park, California 94025-1114
Telephone: (650) 838-4300
Facsimile: (650) 838-4350

Elizabeth L. McDougall, WA Bar No. 27026
 *(pro hac vice)*
E-mail: EMcDougall@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, Washington 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000

Attorneys for Plaintiff
craigslist, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| craigslist, Inc., a Delaware corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>Paul Hubert, John Doe d/b/a Craygo.com, and Does 3 through 25, inclusive,<br><br>                    Defendant. | Case No.  CV 08-05067 JW<br><br>**PLAINTIFF AND JUDGMENT CREDITOR CRAIGSLIST, INC.'S OPPOSITION TO DEFENDANT AND JUDGMENT DEBTOR PAUL HUBERT'S MOTION TO VACATE DEFAULT JUDGMENT** |

1

## TABLE OF CONTENTS

2
**Page**

3   I.      INTRODUCTION ........................................................................................................1

4   II.     STATEMENT OF FACTS .........................................................................................1

    III.    ARGUMENT................................................................................................................2

5           A.      Legal Standards for Hubert's Motion to Vacate ...........................................2

6                   1.      Grounds to Set Aside a Default Judgment...................................2

7                   2.      Proper Methods of Service of Process.........................................3

                    3.      The Burden of Proof to Establish Service ...................................3

8   IV.     CONCLUSION............................................................................................................16

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

CASES

*Agricola ABC, S.A. de C.V. v. Chiquita Fresh N. Am., LLC,*
No. 10-cv-772-IEG, 2010 WL 2985500 (S.D. Cal. July 28, 2010)........................................15

*Direct Mail Specialists, Inc. v. Eclat Computerized Techs, Inc.,*
840 F.2d 685 (9th Cir. 1988) ........................................................................................................3

*Forsythe v. Overmyer,*
576 F.2d 779 (9th Cir.1978) ........................................................................................................3

*Jaffe & Asher v. Van Brunt,*
159 F.R.D. 278 (S.D.N.Y. 1994) ............................................................................................15, 16

*McNeil v. Tomlin,*
82 A.D.2d 825 (N.Y. 1981) ..........................................................................................................16

*Nat'l Dev. Co. v. Triad Holding Corp.,*
930 F.2d 253 (2d Cir. 1991) ...................................................................................................15, 16

*Polygram Merch., Inc. v. New York Wholesale Co.,*
2000 WL 23287 (S.D.N.Y. Jan. 13, 2000) ..............................................................................15, 16

*S.E.C. v. Internet Solutions for Bus. Inc.,*
509 F.3d 1161 (9th Cir. 2007) ..................................................................................................3, 4

*S.E.C. v. Ross,*
504 F.3d 1130 (9th Cir. 2007) ......................................................................................................3

*Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang,*
105 F.3d 521 (9th Cir. 1997) ........................................................................................................15

*United States v. Berke,*
170 F.3d 882 (9th Cir. 1999) ........................................................................................................3

*United States v. Rose,*
437 F. Supp. 2d 1166 (S.D. Cal. 2006)........................................................................................3

RULES

Fed. R. Civ. P. 4(e) ...........................................................................................................3, 15, 16

Fed. R. Civ. P. 4(e)(1)....................................................................................................................3

Fed. R. Civ. P. 4(e)(2)..............................................................................................................3, 15

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

Fed. R. Civ. P. 4(e)(2)(B) ...............................................................................................3

4

Fed. R. Civ. P. 55(c) .......................................................................................................2

5

Fed. R. Civ. P. 60(b) .......................................................................................................2

6

Fed. R. Civ. P. 60(b)(4) ...............................................................................................2, 3

7

Rule 4(e)...........................................................................................................................3

8

**OTHER AUTHORITIES**

9

62B Am. Jur. 2d *Process* § 74 (1964-2011) ................................................................15

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CV 08-05067 JW
OPPOSITION TO MOTION TO VACATE
DEFAULT JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

Plaintiff and Judgment Creditor craigslist, Inc. ("craigslist") respectfully submits this opposition to Defendant and Judgment Debtor Paul Hubert's ("Hubert") Motion to Vacate Default Judgment.

Over two years ago, craigslist named Hubert in this lawsuit, fairly served him with the summons and complaint against him, and verified service in an affidavit filed with this Court. Hubert did not respond.  craigslist also sent Hubert multiple informal notices of the lawsuit and of court dates and deadlines.  Hubert still did not respond.  Finally, craigslist sought and this Court granted default judgment against Hubert on April 15, 2010.  Now, when craigslist wants to enforce its judgment, Hubert suddenly wants to vacate it.  It is too late.  craigslist diligently and doggedly pursued Hubert and its claims against Hubert pursuant to the rules of law while Hubert tried hide and to evade the Court system and his liabilities.  Hubert does not get the opportunity to undo craigslist's three years of pursuit because he only now appreciates that the law does indeed apply to him.

Hubert's motion to vacate the default judgment should be denied.

## II.   STATEMENT OF FACTS

On November 5, 2008, craigslist filed a Complaint against John Doe d/b/a/ Craygo.com and Does 2-25 for damages and injunctive relief based on the development, marketing, sale and operation of auto-posting software through the Craygo.com website that interfered with and harmed craigslist and its service to legitimate users.  Electronic Case Filing Docket Entry ("DE") 1.  craigslist originally named only Doe defendants because the Craygo.com operator had concealed his identity.  DE 55 (Decl. of Brian Hennessy in Support of craigslist, Inc.'s Motion for Default Judgment Against Defendant Paul Hubert) ¶¶ 4, 5.  Prompt third-party discovery revealed "Todd Thompson" as the registrant of the Craygo.com website and, consequently, craigslist filed and served a First Amended Complaint naming Todd Thompson as a defendant.  *Id.* ¶¶ 6, 7, 8; DE 17, 19.  Discussion with Mr. Thompson and further related research and investigation subsequently showed that Mr. Thompson's name had been used fraudulently, and identified Paul

1    Hubert as the actual owner and operator of Craygo.com.  DE 55 ¶¶ 8, 9, 10; *see also* DE 29, 35.

2    Mr. Thompson is the stepbrother of Chad Conley, Hubert's domestic partner.  *See* Decl. of

3    Nicholas Manheim ("Manheim Decl.") ¶ 3.

4         On September 23, 2009, craigslist filed the Second Amended Complaint and named

5    Hubert as a defendant.  DE 55 ¶ 12; DE 32, 36, 37.  craigslist served Hubert on September 28,

6    2009, by substitute service on Conley at their mutual residence.[1]  DE 55 ¶ 13; DE 40, 42, 43.

7         Hubert failed to respond to the Second Amended Complaint and therefore the Court Clerk

8    entered default against Hubert on November 4, 2009.  DE 49, 52.  On December 18, 2009,

9    craigslist moved for entry of default judgment.  DE 53.  On April 15, 2010, this Court granted

10   craigslist's motion and entered a default judgment with damages and a permanent injunction

11   against Hubert.  DE 63, 64.

12        On April 12, 2011, craigslist began proceedings in the New York Supreme Court for

13   Tompkins County to enforce this Court's judgment against Hubert (the "New York matter"),

14   including seizure of Hubert's automobile.  *craigslist, Inc. v. Paul Hubert*, No. ND11-51129.  On

15   September 6, 2011, Hubert sought to stay the New York matter pending a motion to vacate the

16   default judgment in this Court.  On September 12, 2011, Hubert filed the instant motion to vacate.

17   DE 65.

### III.   ARGUMENT

**A.   Legal Standards for Hubert's Motion to Vacate**

     **1.   Grounds to Set Aside a Default Judgment**

21        Federal Rule of Civil Procedure ("Rule") 55(c) provides that "[f]or good cause shown the

22   court may set aside entry of default and, if a judgment by default has been entered, may likewise

23   set it aside in accordance with Rule 60(b)."  Fed. R. Civ. P. 55(c).  Rule 60(b), in turn, allows that

24   "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal

25   representative from a final judgment, order, or proceeding" because, among other reasons, "the

26   judgment is void."  *Id.* 60(b)(4).  This is the single ground Hubert argues to support his motion to

27   vacate the default judgment.

---

28   [1] craigslist subsequently released Mr. Thompson from the suit.  DE 55 ¶ 13.

"A final judgment is void and must be set aside under Rule 60(b)(4) '*only if* the court that considered it lacked jurisdiction.'" *S.E.C. v. Internet Solutions for Bus. Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007) (quoting *United States v. Berke*, 170 F.3d 882, 883 (9th Cir. 1999) (emphasis added)).  Here, Hubert argues that this Court lacked jurisdiction due to improper service of process.

**2.      Proper Methods of Service of Process**

Following Rule 4(e), proper service on an individual within a U.S. judicial district may be executed by any of three methods:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e)(2).[2]  Rule 4 requires "substantial compliance." *S.E.C. v. Ross*, 504 F.3d 1130, 1140 (9th Cir. 2007) (quoting *Direct Mail Specialists, Inc. v. Eclat Computerized Techs, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988)).

**3.      The Burden of Proof to Establish Service**

In the usual context of a motion to dismiss that challenges the propriety of service of process, the plaintiff bears the burden to establish that service was proper.  *See, e.g., Forsythe v. Overmyer*, 576 F.2d 779, 781 (9th Cir.1978).  However, the Ninth Circuit has held that "a defendant moving to vacate a default judgment based on improper service of process, where the defendant had *actual notice* of the original proceeding but delayed in bringing the motion until *after entry of default judgment*, bears the burden of proving that service did not occur." *Internet Solutions*, 509 F.3d at 1165 (emphasis added) (following the rule adopted by the Second and Seventh Circuits); *see also United States v. Rose*, 437 F. Supp. 2d 1166, 1172 n.5 (S.D. Cal. 2006).  Moreover, "[a] signed return of service constitutes prima facie evidence of valid service

---

[2] Rule 4(e) also allows service in any manner allowed by the law of the state in which the district court is located or where service is made—here, California and New York.  Fed. R. Civ. P. 4(e)(1). However, because craigslist's service complied with Federal Rule 4(e)(2)(B), the California and New York service statutes are irrelevant.

1    which can be overcome only by strong and convincing evidence." *Internet Solutions*, 509 F.3d at

2    1166 (internal quotations omitted).

3    **B.      The Motion to Vacate Must Be Denied Because Hubert Was Properly Served.**

4            Defendant Hubert's motion to vacate the default judgment entered against him – more

5    than a year ago – must be denied.  Under the applicable standards of law laid out above, the bar

6    for Hubert to prove improper service is extremely high and the self-serving, unsubstantiated

7    declarations by Hubert, his partner and his sister do not meet this hurdle.

8            **1.      Valid Service on Hubert is Presumed and Not Rebutted.**

9            First, the sworn affidavit of a process server made in the regular course of business attests

10   to proper service on Hubert of the summons, the Second Amended Complaint and other case

11   documents on September 28, 2009.  craigslist filed a sworn affidavit of such service on Hubert

12   with the Court on October 8, 2009.  DE 42.

13           Service of the summons and Second Amended Complaint on Hubert was effected by John

14   Madan, a process server with 29 years of experience.  Madan Aff. ¶ 1.  Mr. Madan delivered the

15   summons and Second Amended Complaint (among other documents) to a male who would

16   identify himself only as "Chad" at 25 W. Malloryville Road, Freeville, New York 13068 (the

17   "Freeville Residence").[3]  Madan Aff. Ex. A.  Mr. Madan verified with Conley that Hubert lived

18   there, then left the papers with Conley and told him that the papers were for Paul Hubert.  *Id.*

19   ¶¶ 5, 6.  Mr. Madan subsequently prepared an affidavit of service in the normal course of his

20   business as a process server with a list of documents served.[4] *Id.* ¶ 2, Ex. A.

21           In light of this single piece of evidence, Hubert cannot establish invalid service without

22   "strong and convincing evidence." *Internet Solutions*, 509 F.3d at 1166.  But he has none.  The

23   three affidavits that constitute the totality of his evidence weakly allege circumstances that are not

24   merely implausible, but are directly contradicted by a plethora of independent evidence as

25   explained below.

26   _____

     [3] Chad Conley is the owner of the Freeville Residence.  Hanson Decl. ¶ 37, Ex. FF.  Freeville,
     New York is located in upstate New York, near Ithaca.

27   [4] craigslist's counsel inadvertently neglected to include the document list when it originally filed
     Mr. Madan's affidavit with this Court.  Hennessy Decl. ¶ 4.  Mr. Madan's complete affidavit, with list, was

28   is attached to the Madan Affidavit as Exhibit A.

1

2
### 2.   Hubert Had Actual Notice of the Case But Did Nothing Until After Default Judgment Was Entered and craigslist Sought to Collect.

3          Second, Hubert has had actual notice of this lawsuit for at least two years and more likely

4   three years.  However, only now that craigslist has taken action to enforce its judgment against

5   Hubert has Hubert determined to pay any attention to our legal system and to try to undo the

6   judgment that it took craigslist three years and substantial investment to obtain.  Consequently,

7   Hubert has the burden to prove to the Court *very, very* good reason for his prior disregard of

8   craigslist's action and this Court's authority.  *Internet Solutions*, 509 F.3d at 1166.

9          Hubert tries to skirt the burden properly allocated to him by denying that he had notice of

10  craigslist's action until a few months ago.  However, Hubert's denial of knowledge of craigslist's

11  lawsuit is supported only by his own denial.  Evidence from all other sides demonstrates his

12  actual notice long before default judgment was sought or entered.

13         In addition to the service discussed above, craigslist provided Hubert with informal notice

14  of the lawsuit.  First, on November 14, 2008, craigslist's counsel sent a Craygo.com a copy of the

15  summons and complaint by email.[5]  Hennessy Decl. ¶ 2, Ex. A.  In public comments regarding

16  this matter, Hubert has recently acknowledged that he is the owner of Craygo.com.  Hanson Decl.

17  ¶ 36, Ex. EE.  On October 5, 2009, after craigslist had identified Hubert as the owner and

18  operator of Craygo.com and added him to the lawsuit, craigslist's counsel emailed Hubert at

19  paulhubert21@yahoo.com[6] to alert him to an upcoming court deadline.  Manheim Decl. ¶ 6,

20  Ex. A.  As a courtesy, craigslist's counsel attached a copy of the summons, Second Amended

21  Complaint and other papers relating to the commencement of this lawsuit.  *Id.*  Further, on

22  October 7, 2009, craigslist's counsel mailed a copy of craigslist's Notice of Voluntary Dismissal

23  to Paul Hubert at 25 West Malloryville Road, Freeville New York 13068.  DE 41, 41; Hennessy

24  Decl. ¶ 5, Ex. C.

25  _____

26          [5] craigslist's counsel emailed Craygo.com at two email addresses:
    craygo.com@domainsbyproxy.com and webmaster@craygo.com.  Hennessy Decl. ¶ 2, Ex. A.  The
27  address craygo.com@domainsbyproxy.com is listed as the administrative and technical contact in a
    "Whois" report for Craygo.com.  *Id.* ¶ 3, Ex. B.
          [6] Hubert cannot dispute the validity this email address.  He provided it to Tompkins Trust
28  Company on his signature card for his savings account in July 2009.  Hanson Decl. ¶ 6, Ex. C.

1        Hubert's own actions in August and September 2009 further suggest that he knew of the

2   lawsuit.  On August 21, 2009, craigslist's counsel spoke with Mr. Thompson (former defendant

3   and Conley's stepbrother) by telephone and informed him that craigslist would be naming Hubert

4   as a defendant in this action.  Manheim Decl. ¶ 3.  Almost immediately thereafter, Hubert began

5   withdrawing cash from his bank accounts.  Between August 25 and September 14, 2009, Hubert

6   made fourteen cash withdrawals ($400 each, presumably the daily limit for ATM withdrawals)

7   from a savings account he maintained with Tompkins Trust Company ("Tompkins").  Hanson

8   Decl. ¶ 8, Ex. E.  Moreover, between September 2 and September 11, 2009, Hubert cashed four

9   checks to himself from his Tompkins checking account, totaling $8,822.76.  *Id.*

10        Finally, on June 16, 2010, craigslist's counsel provided Hubert with notice that this Court

11   had entered a judgment and permanent injunction against him by sending a copy of the judgment

12   and permanent injunction to Paul Hubert at four email addresses:  paul@surroworld.com,

13   raunchy@gmail.com, admin@erbio.com,[7] and paulhubert21@yahoo.com.  Decl. of Simon

14   Conant ("Conant Decl.") ¶¶ 3, 7, Ex. A.  The same day, craigslist's counsel received notices from

15   an email tracking service[8] indicating that the messages sent to paul@surroworld.com and

16   admin@erbio.com had been read.  *Id.* ¶ 4.  Notably, both emails were opened at the same IP

17   address, which appears to be located near Ithaca, New York.[9]  *Id.* ¶ 4, 6.  On June 17, 2010,

18   craigslist's counsel received a notice from the email tracking service that someone at the

19   admin@erbio.com address had opened the attachment.  *Id.* ¶ 8.

20        Hubert knew about this case, not merely weeks or months, but years before default

21   judgment was entered.

22

---

23       [7] In October 2009, Hubert provided this email address to Alternatives Federal Credit Union in a loan application.  Hanson Decl. ¶ 14, Ex. J.  This email address is also connected to Conley's account with PayPal.  *Id.* ¶ 3, Ex. A.

24       [8] This email tracking service, called "ReadNotify," attempts to determine if and when an email is opened by the recipient, along with the "IP address" of the recipient.  Conant Decl. ¶ 4.

25       [9] The IP address at which both emails were opened was 74.79.151.49.  Conant Decl. ¶ 4.  By

26   reviewing the "traceroute" for a given IP address, it is often possible to tell the approximate physical location of the computer to which the IP address is assigned.  On June 17, 2010, Simon Conant, an Internet Enforcement Investigator at Perkins Coie LLP, craigslist's counsel, reviewed the traceroute for the

27   74.79.151.49 IP address where the Judgment Notification Email was opened.  *Id.* ¶ 6, Ex. B.  The last two "hops" before the final IP address contained "syrcny" – Syracuse, New York – and "ithcny" – Ithaca, New

28   York.  *Id.*  Thus, it appears the emails were opened at a residence near Ithaca, New York.  *Id.*

    -6-    CV 08-05067 JW
OPPOSITION TO MOTION TO VACATE
DEFAULT JUDGMENT

3.      **Hubert Was Properly Properly Served With Process Under Rule 4**

Ultimately, whichever side bears the burden of proof on service, Hubert was properly served and the default judgment must stand. All credible evidence supports that Hubert was properly served on September 28, 2009, when Mr. Madan left copies of the summons and Second Amended Complaint with Conley at the house that was Hubert's and Conley's mutual place of usual abode. Fed. R. Civ. P. 4(e)(2). As explained below, Conley's purported recollection that no documents were left with him on September 28, 2009, is either faulty or fabricated. Similarly, the contention that Conley's house was not Hubert's usual place of abode in September 2009 is contradicted by such a mass of hard evidence that it can only be fictitious.

a.      **Other Service on Hubert**

craigslist has hired a process server to serve or attempt to serve papers on Hubert on two occasions other than that described above—May 19, 2010 and June 27, 2011.[10] On May 19, 2010, James Inman, a process server hired by craigslist, attempted to serve Hubert with judgment papers at the Freeville Residence. Inman Affidavit ¶ 9, Ex. C. At that time, he met Conley at the Freeville residence. *Id.* Conley stated that Hubert did not live at the residence (despite the presence of Hubert's vehicle in front of the house). *Id.* Mr. Inman did not leave the judgment papers at the Freeville residence, given that Conley had stated that Hubert did not live at the residence as of that time. *Id.*, ¶ 10.

Mr. Inman met Conley again on June 27, 2011, when he served Conley with a restraining notice in the New York matter by delivering a copy of the papers to Conley outside a laundry room near an apartment residence at 37 Uptown Road, Unit 15A, Ithaca, New York. *Id.*, ¶ 4, Ex. B.[11] On that same day, he served Hubert with a restraining notice in the New York matter by delivering a copy to him at the same Ithaca residence. *Id.*

The portrayal of the attempted service presented in Conley's affidavit is consistent with Mr. Inman's account of his May 19, 2010 attempted service of this Court's judgment against

---

[10] All of the details of Mr. Inman's service attempt on May 19, 2010 and services on June 27, 2011 are set out in reports prepared by him in the ordinary course of business within a day of the events. *See* Inman Affidavit ¶ 11, Exs. B, C.

[11] Conley and Hubert had apparently moved from the Freeville residence to a temporary residence due to a renovation at the Freeville Residence. Hanson Decl. ¶ 33, Ex. BB.

1   Hubert, recorded in a report created within a day of the event and in a later affidavit submitted to

2   this Court.  For example, Conley states that the process server "suggested I was Paul and that I

3   was lying to him;" Mr. Inman acknowledges that he "asked for Paul Hubert" and "hinted to

4   [Conley] that its [sic] too bad he can't prove he is not Paul Hubert." *Compare* Conley Aff. ¶ 4,

5   *with* Inman Aff. Ex. C.  Conley reports that he showed the server his driver's license; Mr. Inman

6   also reports that Conley produced his driver's license. *Compare* Conley Aff. ¶ 7, *with* Inman Aff.

7   Ex. C.

8           Further, Conley reports that the process server was accompanied by a woman in his

9   vehicle; in his affidavit in support of this opposition, Mr. Inman acknowledges that his wife

10  accompanied him on May 19, 2010.  *Compare* Conley Aff. ¶ 9, *with* Inman Aff. ¶ 10.  Conley

11  reports that the process server did not leave any papers with him; Mr. Inman also reports that he

12  did not leave the papers with Conley on May 19, 2010.  *Compare* Conley Aff. ¶ 10, *with* Inman

13  Aff. ¶ 10.  Finally, Conley describes a second encounter, on June 27, 2011 with the same process

14  server outside his laundry room of his temporary residence; Mr. Inman also describes his service

15  of a restraining notice on Conley outside a laundry near his apartment in Ithaca.  *Compare* Conley

16  Aff. ¶ 11, *with* Inman Aff. ¶ 10.

17          In contrast, the story presented by Conley is wholly inconsistent with Mr. Madan's record

18  of his September 28, 2009 service of the summons and Second Amended Complaint.  Conley

19  reports that the process server did not leave any papers with him; Mr. Madan did leave the

20  summons and complaint (and other papers) at the Freeville residence, and prepared an affidavit

21  confirming such service shortly thereafter.  *Compare* Conley Aff. ¶ 10, *with* Madan Aff.  ¶ 6 &

22  Ex. A.  Conley reports that the process server was accompanied by a woman in his vehicle; in his

23  affidavit in support of this opposition, Mr. Madan attests that he did not have a woman with him

24  when he served the summons and complaint on September 28, 2009 and that it is his practice to

25  serve process alone.  *Compare* Conley Aff. ¶ 9, *with* Madan Aff. ¶ 7.

26          Thus, the only reasonable conclusion from the affidavits of Messrs. Conley, Madan and

27  Inman is that (a) <u>Mr. Madan</u> served the summons and Second Amended Complaint on Conley at

28  the Freeville Residence on <u>September 28, 2009</u>; and (b) <u>Mr. Inman</u> attempted to serve Conley

                                            -8-                    CV 08-05067 JW
                                                          OPPOSITION TO MOTION TO VACATE
                                                                 DEFAULT JUDGMENT

with papers for Hubert on <u>May 19, 2010</u> but did not leave those papers when Conley stated Hubert did not live at that address.  Indeed, the primary inconsistencies between Conley's recollection of the service events described above and Messrs. Madan and Inman's accounts are the date of the attempted service and the identity of the process server.  But Messrs. Madan and Inman each prepared accounts of the relevant events in the ordinary course of business shortly thereafter.  *See* Madan Aff. Ex. A; Inman Aff. Exs. A, B.  Thus, they are inherently more reliable than Conley's affidavit, prepared in support of Hubert's motion.

### b.     Hubert's Residence at the Freeville Residence

In support of his Motion, Hubert claims that from May to November 2009 he lived with his sister, Penny Utter, in Otego, New York, rather than at the Freeville Residence.  This claim is belied by an abundance of evidence, including:  (1) Hubert's financial records and vehicle registrations listing his address as the Freeville Residence; (2) online statements by Hubert demonstrating that he and Conley lived together in a committed relationship during this period; and (3) online statements and other evidence demonstrating that Hubert's daily activities during this period were centered in Freeville rather than Otego.

All of Hubert's financial records subpoenaed by craigslist pursuant to Federal Rule of Civil Procedure 69 and in the New York matter list the Freeville Residence as his address during May to November 2009.  Indeed, the records from Hubert's bank account at Tompkins, credit card account at Chase and car loan from Alternatives Federal Credit Union uniformly list his address as the Freeville Residence, including those for the May to November 2009 period.  Hanson Decl. ¶ 12, Ex. H.  Many of these records were signed by Hubert in 2009.  For example:

- On July 21, 2009, Hubert executed a signature card for an account at Tompkins Trust Company listing his address as the Freeville Residence.  *Id.* ¶ 6, Ex. C.  This signature card indicated "THE INFORMATION BELOW [including the Freeville Residence] CAN BE USED TO CONFIRM YOUR IDENTITY IF YOU TELEPHONE US OR IN OTHER CIRCUMSTANCES." *Id.*

1       • In September 2009, Hubert wrote and signed at least five checks on his Tompkins

2       checking account, each showing his address as the Freeville Residence. *Id.* ¶ 10,

3       Ex. G.

4       • On October 25, 2009, Hubert signed a loan application stating that his "present"

5       address was the Freeville Residence. *Id.* ¶ 14, Ex. J. Above Hubert's signature,

6       the loan application provided, "You promise that everything you have stated in the

7       application/credit update is correct to the best of your knowledge." *Id.*

8    Moreover, the vehicle registrations for Hubert's two vehicles in 2009 list the Freeville Residence

9    as his address. The registration for his 2005 Nissan 350Z was renewed on March 10, 2009. *Id.*

10   ¶ 34, Ex. CC. The registration for his 2008 Audi Quattro was renewed on August 14, 2009. *Id.*

11   ¶ 35, Ex. DD.

12       Hubert and Conley have been less than candid with this Court (and court in the New York

13   matter) regarding their relationship. It is clear from statements made online by Hubert and by

14   statements in court papers in the New York matter that Hubert and Conley are partners and live

15   together in a committed relationship. For example, on March 19, 2011, in his Twitter account

16   using the handle "thuddly,"[12] Hubert identified himself as the father of infant twins and described

17   a living and dining room remodel of his home. Hanson Decl. ¶ 20(c), Ex. P. In an affidavit

18   submitted to the New York court in July 2011, Conley stated that in March 2011 "I was very busy

19   in my life with newborn twins and a house that was being renovated requiring my family to

20   vacate the residence and live elsewhere." *Id.* ¶ 33, Ex. BB. In June 2011, when Mr. Inman

21   served Hubert and Conley with restraining notices in the New York matter, he found them living

22   at the same apartment (presumably their temporary home during the Freeville Residence's

23   renovation). Inman Affidavit Ex. B.

24

25       [12] There is no doubt that the "thuddly" Twitter account is Hubert's account. On September 12,
     2011, Hubert commented on this lawsuit on his "thuddly" Twitter account, stating (among other things)
26   "@craignewmark & friends improperly served me & obtained a default judgment for over a 1mil!"
     Hanson Decl. ¶ 25, Ex. V. Shortly thereafter, Hubert removed this Twitter account from the Internet.
27   Hanson Decl. ¶¶ 40, 42.

28

CV 08-05067 JW
OPPOSITION TO MOTION TO VACATE
DEFAULT JUDGMENT

In June 2009, Hubert made several statements on his blog, smated.com,[13] that demonstrate that at the time Hubert lived with Conley—not, as he claims, with his sister—and that the two were in a committed relationship.  For example, in June 2009, Hubert wrote on his blog regarding his and Conley's efforts to start a family using his oldest sister, (Ms. Utter[14]), as a pregnancy surrogate.  Hanson Decl. ¶ 21, Exs. S, U.  He referenced talking to Ms. Utter "on the phone" and sending her text messages about her fertility.  *Id.* ¶ 22, Ex. S.  He stated that "[i]f and when my sister gives birth she plans on living with us for a week or two MINIMUM and a month maximum."  *Id.* (emphasis in original).  Further, he stated, "She [his sister] texted me this morning and asked if I'll watch her kids on that weekend and I'm like . . . uhhh?  We had planned to go to Niagara falls for July 4th so I told her that I have to talk to Chad but we could probably take her kids."[15]  *Id.*  These statements are wholly inconsistent with Hubert's claim that he was living with his sister in June 2009.  Other discussions of his and Conley's efforts to start a family together include the following:

- Discussing his and Conley's efforts to start a family through Ms. Utter, in June 2009 Hubert described suggestions made by Ms. Utter to increase the likelihood of becoming pregnant and said, "I don't have a response to this yet.  I'll see what Chad thinks about it later."  *Id.* ¶ 22, Ex. S.

- On August 16, 2009, in response to a blog post on http://qwhy9wordpress.com regarding a gay couple's efforts to start a family through surrogacy, Hubert

---

[13] craigslist's counsel has identified various evidence linking Hubert to this blog.  Conant Decl. ¶¶ 9-26, Exs. E-O.  craigslist's counsel located Hubert's blog using the Internet Archive Way Back Machine and filed copies of Hubert's blog entries on September 8, 2011 in the New York case.  Shortly thereafter, Hubert presumably prevented smated.com from being accessible via the Internet Archive.  Hanson Decl. ¶ 43.

[14] Hubert did not use Ms. Utter's name.  However, he stated that his "oldest sister" was his and Conley's intended pregnancy surrogate.  Hanson Decl. ¶ 24, Ex. U.  Mr. Hubert has three sisters: Penny, Mary and Lisa.  *See* Hanson Decl. ¶ 26, Ex. W; *see also* Hennessy Decl. ¶ 6, Ex. D (listing two sisters, Penny and Lisa).  Mary is his second oldest sister.  Conant Decl. ¶ 24, Ex. L (Hubert blog post referring to Mary as his "second oldest" sister).  Lisa is his youngest sister.  Hanson Decl. ¶ 23, Ex. T.  Accordingly, Penny Utter is the sister referred to in his posts regarding his and Conley's intention to start a family using his sister as a surrogate.

[15] In this same post, Hubert noted that Niagara Falls is a 3.5 hour drive from his home.  Hanson Decl. ¶ 24, Ex. U.  This further supports that his home at the time was in Freeville, not Otego.  According to Google maps, it takes 3 hours and 18 minutes to drive from Niagara Falls to Freeville, while it takes 4 hours and 37 minutes to drive from Niagara Falls to Otego.  *Id.* ¶¶ 31-32.

commented, "It is great to hear that you are a gay couple.  We are as well and we

have actually JUST started our process."  Conant Decl. ¶ 22, Ex. J (emphasis in

original).  He went on to state that it "is cheaper to do fraternal twins rather than

one at a time."  For these comments, Hubert used the handle "smated" and signed

one comment "Paul (smated.com)."  *Id.*

- Also in his August 16, 2009 comments to the http://qwhy9wordpress.com blog

  post, Hubert recommended that the initial poster "look into [a reproductive

  services] agency such as Circle Surrogacy out of California (west) or Melissa

  Brisman, LLC out of New Jersey (east)."  *Id.*  He later discussed retaining a

  "Michelle Brisman."  *Id.*  Hubert's bank records corroborate that he was the person

  commenting on the blog.  On June 30, 2009, Hubert wrote a check to "Melissa

  Brisman, Esq., LLC" for a "consultation fee."  Hanson Decl. ¶ 7, Ex. D.  Melissa

  B. Brisman is a reproductive lawyer, based in New Jersey who, according to her

  website, provides legal advice and assistance in connection with reproductive

  arrangements, including surrogacy.  Conant Decl. ¶ 23, Ex. K.

Thus, Hubert and Conley were attempting to start a family at the very same time that Hubert

claims to have been living with his sister over 70 miles away.

Further, in the summer of 2009, Hubert's online statements reveal that Hubert and Conley

were in the midst of remodeling the kitchen of the Freeville Residence:

- In June 2009 Hubert stated, "Today Chad and his brother Trent were fastening the

  cabinets together . . . .  I am tired of not having a kitchen to prepare good

  meals . . . ."  Hanson Decl. ¶ 22, Ex. S.

- In June 2009 Hubert stated, "Today we are (well Chad is) leveling the kitchen

  floor before we install the base cabinets. . . .  Either way, the leveling mix actually

  works great.  I want to use it in the garage and in the basement as well.  I don't

  want to mention it to Chad yet because I know he would want to do it but I dont

  [sic] want to start any new projects yet until the kitchen is done."  *Id.*

-12-

- On August 5, 2009, Hubert wrote on his Twitter account using the handle "smated,"[16] Hubert stated, "Our Granite Countertops have finally been installed!" *Id.* ¶ 27, Ex. X.  Financial records produced in connection with craigslist's enforcement efforts in the New York matter corroborate that Hubert posted these comments.  On August 4, 2009, Chad Conley signed a check, using an account for Magna Marketing Group,[17] for $3,699 to "All Stone."  *Id.* ¶ 9, Ex. F.  According to its website, All Stone and Tile is a company based in Ithaca, New York that produces granite-fabricated countertops.  *Id.* ¶ 28, Ex. Y. (http://www.allstoneandtile.com/).

Other statements that Hubert made online demonstrate the nature of his relationship to Conley:

- In June 2009, Hubert posted a picture on his flickr.com account[18] labeled "Chad's Truck" and stated, "*We* got this over the summer.  It's pretty decked out."  Hanson Decl. ¶ 20(d), Ex. Q (emphasis added).  Hubert also referenced this vehicle in a blog post in June 2009.  *Id.* ¶ 20(d), Ex. Q ("Chad got a new truck . . . .").  New York motor vehicle records confirm that Conley was the registered owner of a Toyota Tundra Crew Cab truck, beginning in September 2009 (and list the Freeville Residence as his address).  *Id.* ¶ 38, Ex. GG.

- In December 2009, Hubert posted a picture on his flickr.com account labeled "Lisa's 350z" and stated, "*We* bought Lisa a 350z during the summer of 2009."  *Id.* ¶ 20(e), Ex. R (emphasis added).  New York motor vehicle records confirm that Hubert was the registered owner of a 2005 Nissan 350Z, beginning in March 2009 (and list the Freeville Residence as his address).  *Id.* ¶ 34, Ex. CC.

---

[16] This twitter account stated, "Check out my blog for surrogacy related topics.  GO NOW! http://www.smated.com."  Hanson Decl. ¶ 27, Ex. X.

[17] Magna Marketing Group is a company in which Hubert has claimed an ownership interest.  Hanson Decl. ¶¶ 13, 18, Exs. I, M.

[18] craigslist's counsel filed copies of Hubert's flickr.com entries on September 8, 2011 in the New York case.  Shortly thereafter, Hubert removed these pictures.  Hanson Decl. ¶ 41.

-13-

CV 08-05067 JW
OPPOSITION TO MOTION TO VACATE
DEFAULT JUDGMENT

1      • In December 2009, Hubert posted a picture on his flickr.com account labeled

2         "Birthday Present" and stated, "Chad got me a Macbook Pro for my birthday on

3         Nov 30th." *Id.* ¶ 39, Ex. HH.  Bank records confirm that Hubert's birthday is

4         November 30.  *See id.* ¶ 6, Ex. C.

5      Finally, Hubert's daily activities during the May to November 2009 period centered in the

6   Freeville area, rather than in Otego (which is over 70 miles away).  Hanson Decl. ¶ 31.  For

7   example:

8      • In June 2009, Hubert wrote numerous blog posts about raising his younger sister,

9         Lisa, age 15 at the time.  *Id.* ¶ 23, Ex. T.  On September 8, 2009, Hubert wrote a

10        check (which listed the Freeville Residence as his address) to Dryden Central

11        School that included a memo entry "Lisa Hubert 11th Lunch."  *Id.* ¶ 10, Ex. G.

12        Dryden Central High School is 3.6 miles away from the Freeville Residence; it is

13        72.8 miles away from Otego, New York.  *Id.* ¶¶ 29-30, Exs. Z, AA.  It is unlikely

14        that Hubert was living in Otego while raising his sister, who attended school 72

15        miles away.

16     • As discussed above, between August 25 and September 14, 2009, Hubert made

17        fourteen cash withdrawals ($400 each) from his savings account.  *Id.* ¶ 8, Ex. E.

18        Each of these withdrawals were made at ATM machines in Dryden (3.5 miles

19        from the Freeville Residence and 71.7 miles from Otego) or Ithaca (13.2 miles

20        from the Freeville residence and 77.6 miles from Otego).  *Id.* ¶¶ 31-32, Exs. Z,

21        AA.

22     • In August 2009, Hubert cashed two checks from Conley in Dryden and Ithaca (not

23        Otego).  *Id.* ¶ 9, Ex. F.

24     This evidence also supports the conclusion that Hubert was in fact living at the Freeville

25   Residence, rather than in Otego, during August and September 2009.

26     Even if Hubert did, as he now claims, live with Ms. Utter for a brief period in 2009,

27   craigslist's service at the Freeville Residence was proper.  The Ninth Circuit has recognized that a

28   person may have more than one "dwelling or usual place of abode" at which he or she may be

1   served pursuant to Rule 4(e)(2).  *Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105

2   F.3d 521, 524 (9th Cir. 1997) (upholding service of a Taiwanese national at his home in

3   California, and citing *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991));

4   *see also Jaffe & Asher v. Van Brunt*, 159 F.R.D. 278, 280 (S.D.N.Y. 1994).  Accordingly, for

5   purposes of service under Rule 4(e), an individual can have multiple "'dwelling houses or usual

6   places of abode,' provided each contains sufficient indicia of permanence."  *Nat'l Dev.*, 930 F.2d

7   at 257 (quoting a predecessor to Fed. R. Civ. P. 4(e)(2)); *see also Agricola ABC, S.A. de C.V. v.*

8   *Chiquita Fresh N. Am., LLC*, No. 10-cv-772-IEG, 2010 WL 2985500, at *5 (S.D. Cal. July 28,

9   2010) ("A person can have more than one dwelling house or usual place of abode for purposes of

10  Rule 4(e)(2), so long as each contains sufficient indicia of permanence.").

11          "The cases discussing whether a place may be classified as a dwelling house or usual

12  place of abode are highly fact-specific." *Agricola ABC*, 2010 WL 2985500, at *4.  One treatise

13  has stated:

> Factors which are considered in determining whether a place is a
> defendant's usual place of abode include the retention of a room and
> storage of possessions there, the intention to return, the use of that address
> on official forms such as drivers' licenses and voters' registrations, the use
> of a telephone listing at that location, a failure to provide the post office
> with a forwarding address, the receipt of actual notice, and the defendant's
> ability to present at least some evidence that his or her abode is elsewhere.

18  62B Am. Jur. 2d *Process* § 74 (1964-2011).  Courts have found the following to be indicia of

19  permanence at an address:  the defendant's receipt of mail at the address, *Jaffe*, 159 F.R.D. at 280;

20  the defendant's renewal of vehicle registration listing the address, *Polygram Merch., Inc. v. New*

21  *York Wholesale Co.*, 2000 WL 23287, at *3 (S.D.N.Y. Jan. 13, 2000); the defendant's use of the

22  address on bank account records, *id.*; and evidence that the defendant returned to the residence

23  after an absence.  *Id.*

24          Here, the record provides similar indicia of permanence in the Freeville Residence.  All of

25  Hubert's financial records from August 2008 to October 2010 use the Freeville Residence as his

26  address.  Hanson Decl. ¶¶ 5-8, 10-12, 14-18, Exs. B-E, G-H, J-M.  In particular, his bank records

27  were addressed to the Freeville Residence.  *Id.* ¶¶ 5-8, 10, Exs. B-E, G; *see Jaffe*, 159 F.R.D. at

28

280; *Polygram Merch.*, 2000 WL 23287 at *3.  Further, he renewed his vehicle registration in

July 2009 using the Freeville Residence as his address.  Hanson Decl. ¶ 35, Ex. DD; *see*

*Polygram Merch.*, 2000 WL 23287 at *3.  On July 21, 2009, he signed a bank signature card that

indicated the Freeville Residence as the address at which he could be contacted.  Hanson Decl.

¶ 6, Ex. C.  And on October 25, 2009, he signed a loan application using the Freeville Residence

as his address.  Hanson Decl. ¶ 14, Ex. J.[19]

Moreover, as discussed above, Hubert's blog and Twitter statements establish that he and

Conley were in the process of jointly remodeling the Freeville Residence in the summer of 2009,

further supporting its permanence as his residence.  Hanson Decl. ¶ 22, Ex. S; *see Nat'l Dev. Co.*,

930 F.2d at 258 (finding that where the defendant "owned and furnished the apartment and spent

a considerable amount of money remodeling it to fit his lifestyle" there was sufficient indicia of

permanence for service at that apartment).  And, even if Hubert lived with Ms. Utter for a short

time, he eventually returned to the Freeville Residence, further providing indicia of permanence.

*Polygram Merch.*, 2000 WL 23287 at *3.  Indeed, bank records as recent as October 2010 list the

Freeville Residence as his address.  Hanson Decl. ¶ 16, Ex. K.

Thus, the Freeville Residence has substantial indicia of permanence as Hubert's "dwelling

or usual place of abode" pursuant to Rule 4(e).  Accordingly, craigslist's service at that residence

was proper.

## IV.   CONCLUSION

For the foregoing reasons, craigslist respectfully requests that the Court deny Hubert's

motion to vacate default judgment.

---

[19] Finally, courts have recognized that, where a defendant represents to others that he lives at a certain address, he is estopped from contesting service at that address.  *See Jaffe*, 158 F.R.D. at 280 (estopping defendant from contesting service where he represented to party that he lived at that address); *McNeil v. Tomlin*, 82 A.D.2d 825, 825 (N.Y. 1981) (defendant estopped from contesting service where she affirmatively represented her address in renewing her vehicle operator's license).  Here, Hubert represented the Freeville Residence to be his address numerous times during the May to November 2009 timeframe, including a vehicle registration renewal and bank account information.  Hanson Decl. ¶¶ 6, 14, 35, Exs. C, J, DD.  In particular, on July 21, 2009 he signed a signature card stating "THE INFORMATION BELOW CAN BE USED TO CONFIRM YOUR IDENTITY IF YOU TELEPHONE US OR IN OTHER CIRCUMSTANCES" and listing the Freeville Residence as his street address.  *Id.* ¶ 6, Ex. C.  On October 25, 2009, he signed a loan application using the Freeville address.  *Id.* ¶ 14, Ex. J.  Having represented that the Freeville Residence was his address, this Court should estop him from contesting service at that address now.

CV 08-05067 JW
OPPOSITION TO MOTION TO VACATE
DEFAULT JUDGMENT

1

DATED:  September 26, 2011                    **PERKINS COIE** LLP

2

3                                                      By: /s/ Elizabeth L. McDougall

                                                           Elizabeth L. McDougall (WA Bar No.
4                                                          27026) (pro hac vice)
                                                           EMcDougall@perkinscoie.com
5                                                          Brian Hennessy (SBN 226721)
                                                           BHennessy@perkinscoie.com
6

7                                                      Attorneys for Plaintiff
                                                       craigslist, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28